Maurice VerStandig, Esq.
Nevada Bar No.: 15346
THE VERSTANDIG LAW FIRM, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Telephone: (301)444-4600
Facsimile: (301)444-4600
Email: mac@mbvesq.com
*Counsel for Jeffrey Toll*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | | |
|---|---|---|
| JEFFREY TOLL,<br><br>Plaintiff,<br><br>v.<br><br>NEVADA PROPERTY 1, LLC d/b/a THE COSMOPOLITAN OF LAS VEGAS<br><br>Defendant. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Case No. 2:20-cv-929 |

**<u>COMPLAINT AND DEMAND FOR TRIAL BY JURY</u>**

Comes now Jeffrey Toll ("Mr. Toll" or the "Plaintiff"), by and through undersigned counsel, and as and for his complaint (the "Complaint") against Nevada Property 1, LLC d/b/a The Cosmopolitan of Las Vegas ("NP1" or the "Defendant") states as follows:

**Introduction**

1. This case concerns the Defendant's false imprisonment of Mr. Toll, for approximately three hours, without justification or cause.

2. This false imprisonment followed a bizarre episode in which the Defendant lured Mr. Toll to its casino resort for the putative purpose of having him partake in a high end slot





machine promotion and then searched his hotel room – despite the presence of a "Do Not Disturb" sign on the door – while he was expending monies in the Defendant's casino.

3. Once the Defendant realized – nearly three hours too late – it did not have anything even vaguely approaching cause to detain Mr. Toll, it promptly banished him from the casino property, happily keeping the more than $150,000 he expended to qualify for a promotion without giving him the benefit of the enticement utilized to lure him into expending those appreciable funds.

4. This suit is brought to seek recourse for the Defendant's unlawful false imprisonment, for its bait-and-switch operation of a gaming promotion, and for its generally tortious treatment of Mr. Toll.

**Parties**

5. Mr. Toll is a natural person who is a citizen of the State of New Jersey by virtue of his ongoing domicile therein.

6. NP1 is a Delaware limited liability company with its principle place of business being in the State of Nevada.

7. Upon information and belief, and solely for purposes of determining the citizenship of the Defendant, NP1 has – as recently as October 7, 2019 – indicated, in a filing in this Honorable Court, that it is owned by (i) BRE Spade Mezz 1 LLC and (ii) BRE Spade Voteco LLC. *See Nevada Property 1, LLC v. Citibank, N.A.*, *et al.*, Case No. 2:19-cv-1121-APG-NJK (DE #41).

8. Upon information and belief, and solely for purposes of determining the citizenship of the Defendant, NP1 "is wholly owned by other limited liability companies tracing



back to 100% ownership by BRE Spade Parent LLC." *Morris Schneider Wittstadt, LLC v. Nevada Property 1 LLC*, Case No. 2:15-cv-01175-RFB-VCF (DE #18 at 22:3-5).

9. Upon information and belief, and solely for purposes of determining the citizenship of the Defendant, "BRE Spade Parent LLC is in turn owned by twelve limited partnerships organized in Delaware." *Id.* at 22:6-7.

10. Upon information and belief, and solely for purposes of determining the citizenship of the Defendant, "Nevada Property 1 LLC is a citizen of Delaware for purposes of diversity." *Id.* at 22:17.

**Jurisdiction & Venue**

11. This Honorable Court enjoys jurisdiction over the matter *sub judice* pursuant to the allowances of Section 1332 of Title 28 of the United States Code, as this is a dispute between citizens of different states in which the matter in controversy exceeds $75,000.00.

12. Venue is properly laid in the Honorable Court pursuant to Section 1391(b) of Title 28 of the United States Code because a substantial part of the events giving rise to the claims stated herein occurred at the Defendant's property in Clark County, Nevada.

**General Allegations: Million Point Club III Promotion**

13. Commencing in or about January 2019, the Defendant advertised a promotion whereby persons earning one million player club points at the Defendant's property would gain entry into various drawings as well as a slot machine tournament (the "Million Point Club III Promotion").

14. Relying on the Defendant's express promotion and enticement, Mr. Toll traveled to Las Vegas, and the Defendant thereafter enjoyed the benefit of Mr. Toll wagering more than



VS VerStandig LAW FIRM

$7,000,000.00 – and losing more than $150,000.00 – in his pursuit of qualification for the Million Point Club III Promotion.

15. After Mr. Toll qualified for the Million Point Club III Promotion, the Defendant contacted Mr. Toll directly, concerning his qualification, and furnished Mr. Toll with a complimentary penthouse hotel room on its property so as to entice him to travel to Las Vegas to participate in the subject promotion.

16. On Thursday, May 30, 2019, an agent of the Defendant went so far as to send Mr. Toll a text message containing various data qualifying him for participation in the Million Point Club III Promotion.

17. The Defendant's efforts to lure others with the subject enticement, however, fell largely flat as, upon information and belief, only three other people qualified for the subject drawings and slot machine tournament.

**General Allegations: Mr. Toll's Detention by the Defendant**

18. On or about Wednesday, June 5, 2019 – the day before the Million Point Club III Promotion was to have its qualification period terminated – Mr. Toll was playing a slot machine on the Defendant's property when casino personnel tapped Mr. Toll on the shoulder and asked him to step off the floor so as to speak with them.

19. Mr. Toll politely declined to leave the casino floor with this member of the Defendant's personnel.

20. The individual then inquired of Mr. Toll as to whether or not anyone else was staying in the penthouse room the Defendant was furnishing to Mr. Toll.

21. The individual then endeavored to take Mr. Toll to a backroom, which Mr. Toll politely declined.





22. At this juncture, the individual – an agent of the Defendant – asked Mr. Toll to go to his hotel room, to which Mr. Toll agreed as the individual escorted him.

23. It soon became apparent the Defendant had already searched Mr. Toll's hotel room, despite the presence of a "Do Not Disturb" sign being affixed to the door.

24. Once in his hotel room and in the presence of the Defendant's agents, Mr. Toll touched a Neiman Marcus bag (the "Bag"); this prompted the Defendant to call local law enforcement authorities.

25. To explain the summoning of law enforcement, the Defendant's agent pointed to a so-called "Green Dot" credit card in the Bag; the card was lawfully issued in the name of Mr. Toll's wife, to whom Mr. Toll had been married for approximately four years at the time.

26. At this point, Mr. Toll was frisked and searched – against his will – by one or more agents of the Defendant.

27. After being frisked and searched, Mr. Toll was forcibly detained, against his will, in a holding cell on the Defendant's property (with such cell very much not being a part of the subject hotel room in which Mr. Toll had been staying but, rather, bearing marked resemblance to a jail cell)

28. Mr. Toll was then held, against his will, in the Defendant's jail-like cell for a period of approximately three hours.

29. After approximately three hours, Mr. Toll was released from the confinement, banished from the Defendant's property in perpetuity, and notified he would not be able to participate in the Million Point Club III Promotion as a consequence of his expulsion.





**Count I – False Imprisonment**

30. Mr. Toll incorporates and realleges each and every foregoing paragraph of this Complaint as though fully set forth herein.

31. The Defendant confined Mr. Toll in a holding cell, on the Defendant's property, for a period of approximately three hours.

32. The Defendant intended to undertake this act, as the Defendant's own agents cognizantly caused Mr. Toll to be confined.

33. Mr. Toll was conscious of his confinement at all times relevant and suffered harms correlative to his loss of freedom and mobility, together with the inherent fear of being confined in the detention facility of a Las Vegas casino, for the approximately three hour period of time.

34. In light of the Defendant's lawless action, Mr. Toll was particularly apprehensive of what other illegal conduct would be visited upon him, by the Defendant's agents, for the whole of his detention.

WHEREFORE, Mr. Toll respectfully prays this Honorable Court (i) enter judgment in his favor, and against the Defendant, in the sum of Five Hundred Thousand Dollars and No Cents ($500,000.00) as and for compensatory damages; (ii) enter judgment in his favor, and against the Defendant, in the sum of One Million Five Hundred Thousand Dollars and No Cents ($1,500,000.00) as and for punitive damages; and (iii) afford such other and further relief as may be just and proper.

**Count II – Battery**

35. Mr. Toll incorporates and realleges each and every foregoing paragraph of this Complaint as though fully set forth herein.





36. Prior to detaining Mr. Toll, the Defendant caused Mr. Toll to be frisked against his will.

37. Inasmuch as this frisking was contrary to Mr. Toll's wishes, it was inherently offensive in nature.

38. The frisking of Mr. Toll was intentionally undertaken by the Defendant, as its agent engaged the act by design and as part of the process of unlawfully detaining Mr. Toll.

WHEREFORE, Mr. Toll respectfully prays this Honorable Court (i) enter judgment in his favor, and against the Defendant, in the sum of One Hundred Thousand Dollars and No Cents ($100,000.00) as and for compensatory damages; (ii) enter judgment in his favor, and against the Defendant, in the sum of Three Hundred Thousand Dollars and No Cents ($300,000.00) as and for punitive damages; and (iii) afford such other and further relief as may be just and proper..

**Count III – Consumer Fraud**

39. Mr. Toll incorporates and realleges each and every foregoing paragraph of this Complaint as though fully set forth herein.

40. The Defendant advertised to Mr. Toll that if he earned the requisite number of player points, he would be permitted to partake in the Million Point Club III Promotion.

41. As evidenced by the Defendant's election to eject Mr. Toll from its premises, and forever bar his reentry thereupon, without good or valid cause, this representation was false and in contravention of Section 598.0915(15) of the Nevada Revised Statutes.

42. Mr. Toll has been damaged in a sum in excess of $150,000.00, being equal to the monies he lost pursuing the Million Point Club III Promotion.

WHEREFORE, Mr. Toll respectfully prays this Honorable Court (i) enter judgment in his favor, and against the Defendant, in the sum of One Hundred Sixty Thousand Dollars and No





Cents ($160,000.00), or such other amount of actual gaming losses as may be proved with the aid of discovery, as and for actual damages, pursuant to the allowances of Section 41.600(3)(a) of the Nevada Revised Statutes; (ii) award Mr. Toll his reasonable attorneys' fees and costs in this case, and reduce the same to a judgment in his favor, and against the Defendant, pursuant to the allowances of Section 41.600(3)(c) of the Nevada Revised Statutes; and (iii) afford such other and further relief as may be just and proper.

**Count IV – Unjust Enrichment**

43. Mr. Toll incorporates and realleges each and every foregoing paragraph of this Complaint as though fully set forth herein.

44. Mr. Toll bestowed a financial benefit, in the amount of his gaming losses incurred in pursuit of entry in the Million Point Club III Promotion, upon the Defendant.

45. The Defendant was aware of this benefit at all times relevant, going so far as to have its agent expressly contact Mr. Toll about Mr. Toll's qualification for the Million Point Club III Promotion based upon the benefit Mr. Toll had bestowed upon the Defendant.

46. The Defendant has accepted and retained this benefit despite not permitting Mr. Toll to partake in the Million Point Club III Promotion.

WHEREFORE, Mr. Toll respectfully prays this Honorable Court (i) enter judgment in his favor, and against the Defendant, in the sum of One Hundred Sixty Thousand Dollars and No Cents ($160,000.00), or such other amount of actual gaming losses as may be proved with the aid of discovery; and (ii) afford such other and further relief as may be just and proper.





**Jury Demand**

Pursuant to, and in accordance with, the allowances of Federal Rule of Civil Procedure 38, Mr. Toll prays a trial by jury on all matters so triable.

Respectfully submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 15346
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for Mr. Toll*



VerStandig LAW FIRM