UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JEFFREY TOLL,<br><br>    Plaintiff,<br><br>v.<br><br>NEVADA PROPERTY 1, LLC d/b/a THE COSMOPOLITAN OF LAS VEGAS,<br><br>    Defendant. | Case No. 2:20-cv-00929-KJD-DJA<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are competing motions for summary judgment. Plaintiff filed his Motion for Partial Summary Judgment on April 29, 2021. (ECF #15). Defendant responded in opposition (ECF #17) and Plaintiff replied (ECF #20). Defendant filed its Motion for Summary Judgment on April 30, 2021. (ECF #16). Plaintiff responded in opposition (ECF #18) and Defendant replied (ECF #21).

I.   Factual and Procedural Background

Plaintiff Jeffery Toll's ("Toll") action stems from an incident that took place at Defendant Nevada Property 1, LLC d/b/a The Cosmopolitan of Las Vegas' ("The Cosmopolitan") property. (ECF #16, at 3). The Cosmopolitan was hosting a special event and sent Toll promotional mail advertising the Million Point Club III promotion ("the Promotion"). (ECF #15, at 3). If a person could accumulate one million player points at the Cosmopolitan between January 1, 2019 and June 6, 2019, he would qualify for participation in a series of highly exclusive slot machine tournaments and ticket drawings. Id. Toll is a professional gambler and estimated that he could profit from earning one million points and participating in the Promotion. Id. Toll gambled at The Cosmopolitan in January, March, April, May, and June of 2019, accruing losses totaling $238,717.25. Id. Toll claims that he would not have gambled so

much at The Cosmopolitan without the possibility of participating in the Promotion. Id.

The incident details are found on an incident report created by Security Manager Blake Day ("Day"). (ECF #15-10). According to the report, Toll had three rooms reserved under his name at The Cosmopolitan on June 3, 2019. Id. at 2. Day received a call from AML Compliance Manager Melissa Ginsburg ("Ginsburg") regarding an email about Toll and that Toll was to be "evicted and trespassed from the property for Anti-Money Laundering (AML) concerns." Id. at 1. The Cosmopolitan does not include facts regarding why Ginsburg initially made the decision to evict Toll. Instead, The Cosmopolitan focuses on the evidence of a potential crime found after Toll was notified of his eviction. Toll cites a statement given by Tonya Witthauer ("Witthauer") who was Toll's casino host. (ECF #15-9).[1] According to Witthauer, Toll admitted to her that he had "visit[ed] other casinos (disguised wearing a hat) that he had been previously trespassed from and playing under other peoples [sic] cards or fictitious names." Id. at 1. Toll also told Witthauer that he owed the Hard Rock Casino in Florida for unpaid markers but was interested in a credit line from The Cosmopolitan. Id. Witthauer decided to "google" Toll after his fluctuation in gaming activity and statements regarding his need to use an alias when checking into the hotel raised red flags. Id. She found the website https://jeffreywarrentoll.com and reported the information to her superior Kevin Sweet. Id. The website states that Toll is "a convicted felon, fraudster, con artist and scammer with a gambling problem." (ECF #17-2, at 14). Toll alleges that this is what led to the decision to have him trespassed and eventually held in the security room. (ECF #15, at 5).

Because Toll had three rooms registered in his name, each was to be hard pinned[2] to force Toll to contact the front desk. (ECF #15-10, at 2. Day and security officer Kendall Vicenti ("Vicenti") approached the door of Toll's first room while other team members called the room. Id. Neither received a response so Day and Vicenti entered the room. Id. The Cosmopolitan's expert testified in his report that "to lock out a guest, security is required to confirm no one is in

---

[1] Toll erroneously labeled this exhibit "Statement of Blake Day;" however, the report lists Witthauer as the person giving the statement and Day as the person witnessing/accepting the statement.

[2] "Hard pinning (lockout) is a term of art and is the mechanical application for mortice locks in a hotel to prevent an occupant from entering the room by rendering the lock inoperable temporarily." (ECF #17-2, at 7).

the room." (ECF #17-2, at 7). Day and Vicenti saw several dozen Player Cards from various casinos on the bed, some with Toll's name, others with Toll's name misspelled, and others with names not associated with Toll. (ECF #15-10, at 2). They also saw a white Visa Debit Card in the name of Stephanie Kirschbaum in a brown bag on the floor. Id. Day and Vicenti placed the hard pin on the door and left for Toll's next room. Id.

In Toll's second room, Day and Vicenti followed the same procedure to ensure no one was in the room. Id. When there was no response to their knocking or the phone call, they entered the room. Id. They noticed a bag containing a "leafy green substance . . . which appeared to be marijuana," placed the hard pin, and left. Id. At the third room, Day and Vicenti made contact with Marina Stepanova, who advised that the room was registered to a Vladimir Revniaga, but the reservation was under Toll's name.[3] Id. This information was confirmed, and the security officers left. Id. As they left, they received word that Toll was actively gaming on the slot floor, so Day and Vicenti went to confront him, calling for additional security officers as they walked. Id. Day informed Toll that he was with The Cosmopolitan security and requested that Toll accompany him to a security interview room. Id. Toll initially complied but changed his mind when they approached the doors exiting the casino floor and entering the security hallway. Id. Toll stated he would not be "going into a back room or anything." Id. Day asked Toll about the Player Cards in his room and Toll stated that he collects the cards, which belonged to himself or his friends. Id. Toll also indicated that Kirschbaum was his wife, the Visa card in her name was linked to an empty account, and they were going through a divorce. Id. Toll then told Day he would return to his room, pack his belongings, and leave the premises. Id.

While Toll packed, Day contacted Las Vegas Metropolitan Police Department ("Metro") regarding Toll's possession of the Visa card in someone else's name. (ECF #15-10, at 3). Metro indicated it would respond. Id. After Toll packed, Day and Vicenti escorted him to the security interview room around 6:00 p.m. Id. According to Day, Toll went willingly and unrestrained. Id. Day frisked Toll upon entering the security room and found that Toll did not have any weapons

---

[3] After Toll was evicted, Day informed the occupants of Toll's other rooms that they would have to leave also. They did without incident. (ECF #15-10, at 2–4).

or controlled substances on him. Id. Day then read Toll the trespass warning, permanently trespassing him from The Cosmopolitan of Las Vegas. Id. Toll asked if he could use the restroom and Day and Vicenti accompanied him to the restroom on the casino floor. Id. They returned to the security room and waited for Metro to arrive. Id. Metro arrived around 7:37 p.m. and began its investigation. Id. At or around 7:57, Metro officers indicated they would keep the Visa card in Kirschbaum's name but not take any further action upon Toll. Id. Toll was then escorted to valet where he retrieved his car and left the premises. Id. Because Toll had been permanently trespassed, he was not permitted to participate in the Promotion. (ECF #15, at 5).

Toll brought this action on May 25, 2020. (ECF #1). The Cosmopolitan sent Toll its First Set of Requests for Admission on February 19, 2021. (ECF #16, at 4). Toll did not respond. Discovery is complete and the parties seek summary judgment.

II.     Legal Standard

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See FED. R. CIV. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

All justifiable inferences must be viewed in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "Where evidence is genuinely disputed on a particular issue—such as by conflicting testimony—that 'issue is inappropriate for resolution on summary judgment.'" Zetwick v. Cnty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (quoting Direct Techs., LLC v. Elec. Arts, Inc., 836 F.3d 1059, 1067 (9th

Cir. 2016)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255.

### III. Analysis

Both Toll and The Cosmopolitan submitted motions for summary judgment. Toll moves for partial summary judgment, asking the Court to enter summary judgment in his favor as to liability on his false imprisonment, battery, and unjust enrichment claims. Toll submits his other claim and the issue of damages should be reserved for a jury. The Cosmopolitan asks the Court to grant summary judgment in its favor on all claims.

#### a. Battery

Toll's battery claim arises from his time spent in the security room awaiting Metro. Upon entering the room, Day frisked Toll to check for weapons or drugs. Toll does not argue that he was physically hurt by the frisking, but that it was a battery nonetheless and a jury should be tasked with determining appropriate damages. The Cosmopolitan argues that Toll consented to the frisking because when Day indicated he was going to frisk him, Toll did not object. The Cosmopolitan also argues that its security officer only intended to search for weapons, not to harm or offend Toll.

A battery is "an intentional and offensive touching of a person who has not consented to the touching." Humboldt Gen. Hosp. v. Sixth Jud. Dist. Ct., 376 P.3d 167, 171 (Nev. 2016). Consent negates the existence of a battery and denies liability. Prell Hotel Corp. v. Antonacci, 469 P.2d 399, 401 (Nev. 1970). To be effective, "consent must be (a) by one who has the capacity to consent . . . and (b) to the particular conduct, or to substantially the same conduct." Davies v. Butler, 602 P.2d 605, 612 (Nev. 1979) (quoting RESTATEMENT (SECOND) TORTS § 892A). Consent can be either express or implied "and implied consent may be manifested when a person takes no action, indicating an apparent willingness for the conduct to occur." Barnes v. Am. Tobacco Co., 161 F.3d 127, 148 (3d Cir. 1998) (citing RESTATEMENT (SECOND) TORTS § 892 cmt. b & c).

Toll's failure to respond to The Cosmopolitan's requests for admission requires the Court

to accept the requests as admitted. Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection."). As such, Toll admitted that he was informed that he would be frisked, and he did not object or react. This constitutes his implied consent to be frisked. A reasonable person in this situation would understand Toll's inaction as consent to be searched by The Cosmopolitan's security guards, especially as they were waiting for Metro to arrive and making sure the scene was safe. The existence of his consent negates the battery and the Court grants summary judgment to The Cosmopolitan.

### b. Unjust Enrichment

An unjust enrichment claim requires "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) an acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." Takiguchi v. MRI Int'l, Inc., 47 F.Supp.3d 1100, 1119 (D. Nev. 2014). "Unjust enrichment occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another." Id. Toll argues that The Cosmopolitan received a benefit from Toll in the form of Toll's gambling losses, that The Cosmopolitan appreciated that benefit because its host encouraged Toll to continue gambling, and that The Cosmopolitan retained the benefit and has refused to reimburse Toll for his losses. Toll argues that his case is unique and that he does not intend to create an unjust enrichment claim for all gamblers who lose money in Las Vegas. Instead, Toll argues that, as a professional gambler, his losses were a business investment for participation in the Promotion, which The Cosmopolitan intended to keep without offering Toll access to the Promotion. The Cosmopolitan argues that this is not the correct format in which to seek recovery of gambling losses. According to The Cosmopolitan, Nevada statutes set forth an administrative process to recover gaming losses, so Toll must seek his remedy with the Nevada Gaming Control Board ("NGCB").

First, the Court is not convinced by The Cosmopolitan's argument that Toll must seek relief from the NGCB. The same case that The Cosmopolitan cites to support its proposition that Toll must seek relief from the NGCB states that "a party may assert an action outside the

administrative process to recover gambling losses sustained due to casino fraud." Erickson v. Desert Palace, Inc., 942 F.2d 694, 697 (9th Cir. 1991). Toll's allegation is that The Cosmopolitan fraudulently collected his losses without intent to permit Toll's participation in the Promotion. This falls under the exception laid out in Erickson. Additionally, if The Cosmopolitan believed that recovery was subject to the administrative process of NRS § 463.361, it would have had a duty to report the dispute to the NGCB. Nev. Rev. Stat § 463.362 (stating that whenever a dispute which cannot be resolved involving the manner in which a promotion is conducted involves "[a]t least $500, the licensee shall immediately notify the Board."). There is no indication in the record that The Cosmopolitan notified the NGCB of the dispute, suggesting that it does not truly consider the administrative process to be Toll's only potential source of remedy.

Second, while The Court does not find that Toll is limited to administrative relief, it fails to see unjust enrichment in this case. The Cosmopolitan received and retained a benefit in the form of Toll's gambling losses. However, Toll cannot show that his gambling losses do not belong to The Cosmopolitan "in equity and good conscience." Takiguchi, 47 F.Supp.3d. at 1119. There is no evidence that Toll was the victim of the bait-and-switch scheme he alleges; one designed to entice him to lose hundreds of thousands of dollars gambling to then prevent him from participating in the Promotion and keep the profits. It was Toll's behavior that led to his trespass and Toll, as a professional gambler, was aware of the risks of his strategy. He lost nearly a quarter of one million dollars for the chance to participate in the Promotion and maybe earn a profit, knowing full well that it was not guaranteed. (ECF #21-4, at 22 (Toll describing his expected odds to win, stating he "would basically have a 66 percent of cashing and you would have that four times. So you'd have a two-third chance and a two-third chance and a two-third chance which mathematically makes your odds astoundingly in your favor" but acknowledging that "it's not a hundred percent odds.")). He knew the risks of gambling and received the benefit of participating in the games. Because Toll cannot show evidence of his bait-and-switch scheme theory or show that his gambling losses belong in equity and good conscience to someone other than The Cosmopolitan, his unjust enrichment claim cannot prevail.

      c.    <u>Consumer Fraud</u>

The complaint alleges that The Cosmopolitan made a false representation, in "contravention of Section 598.0915(15) of the Nevada Revised Statutes" when it indicated that if Toll "earned the requisite number of player points, he would be permitted to partake in the Million Point Club III Promotion." (ECF #1, at 7). Toll's argument appears to be that The Cosmopolitan never intended to permit his participation in the Promotion and instead fraudulently encouraged him to gamble, only to pull the rug out from beneath him at the final hour. The Nevada Deceptive Trade Practices Act ("NDTPA") states that "[a] person engages in a 'deceptive trade practice' if, in the course of his or her business or occupation, he or she knowingly makes any other false representation in a transaction." NEV. REV. STAT. § 598.0915(15). The Cosmopolitan argues that Toll has not provided any evidence that would support his argument. Toll's response did not address this argument and focused instead on explaining the impact of his failure to respond to the requests for admission and why an expert was not required.

The Court agrees with The Cosmopolitan that Toll has not provided evidence to satisfy the elements of his fraud claim. To prevail on a private NDTPA claim, "a victim of consumer fraud [must] prove that (1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff." <u>Picus v. Wal-Mart Stores, Inc.</u> 256 F.R.D. 651, 658 (D. Nev. 2009). Toll has provided no evidence that The Cosmopolitan made any false representations regarding the Promotion. There is no evidence of Toll's bait-and-switch theory or that The Cosmopolitan committed an act of consumer fraud. Without such evidence, Toll's consumer fraud claim fails.

      d.    <u>False Imprisonment</u>

Toll urges the Court to grant partial summary judgment on his false imprisonment claim as "it is difficult to muster a fact pattern more directly consistent" with false imprisonment than this. (ECF #15, at 7–8). To prevail on a false imprisonment claim, a plaintiff must show that "(1) defendant acted intending to confine plaintiff within boundaries fixed by defendant; (2) defendant's acts directly resulted in such a confinement; and (3) plaintiff is conscious of the confinement or was harmed by it." <u>Lopez v. Golden Nugget Casino</u>, No. 2:17-cv-01712-RFB-

VCF, 2017 WL 3219693, at *5 (D. Nev. July 28, 2017). False imprisonment also requires that "the plaintiff was restrained of his or her liberty under probable imminence of force without any legal cause or justification." Garton v. City of Reno, 720 P.2d. 1227, 1228 (Nev. 1986). Toll argues that there is no more obvious an instance of false imprisonment than this, as he was held in The Cosmopolitan security room until Metro arrived, and Toll was aware of the confinement the whole time. The Cosmopolitan argues that Toll consented to waiting in the security room and that, because Toll has not procured an expert witness to testify regarding The Cosmopolitan's standard of care, Toll cannot establish the elements of a false imprisonment claim.

Nevada statute grants immunity to casinos when they detain an individual who is believed to have committed a felony. NEV. REV. STAT. § 171.1235. The Cosmopolitan mentioned but did not analyze this statute in its reply brief. The statute authorizes casinos to detain individuals when they "have reasonable cause to believe the person detained has committed a felony, whether or not in the presence of such licensee or the licensee's officers, employers or agents." Id. at § 171.1235(2). The detention must only be for a reasonable amount of time, in a reasonable manner, and "solely for the purpose of notifying a peace officer." Id. at § 171.1235(3). "Such taking into custody and detention shall not render the licensee or the licensee's officers, employees or agents criminally or civilly liable for . . . false imprisonment." Id. Casinos are only entitled to this immunity if "there is displayed in a conspicuous place in the establishment a notice in boldface type clearly legible" and following the form provided in the statute. Id. at § 171.1235(4). Whether The Cosmopolitan is entitled to this immunity depends on whether it has complied with the notice requirement. Because the record is silent on this issue, there exists a question of material fact, making summary judgment on the false imprisonment issue improper. The Cosmopolitan's expert stated in his report that "Cosmopolitan's overall actions as it relates to Plaintiff were reasonable, appropriate and well within the common practices and the standard or care for similar casinos in Clark County, Nevada." (ECF #17, at 7). He also states that The Cosmopolitan is immune from liability under NRS § 171.1235 but does not mention the required notice and whether it was posted. Now, whether the immunity applies to The Cosmopolitan is a question of fact which precludes summary judgment.

Even without such immunity, it is possible Toll may not prevail on his false imprisonment claim. He will have to convince a jury that his lay testimony that there was no reason to trespass him and no legal cause or justification for his detention is more believable than The Cosmopolitan's expert and video evidence. The Court is confident that the issues are not "beyond the comprehension of the ordinary lay person." Layton v. Yankee Caithness Joint Venture, L.P., 774 F.Supp. 576, 580 (D. Nev. 1991). The Court will not require Toll to use expert testimony, but it will be difficult to rebut The Cosmopolitan's expert without one. Therefore, the Court does not grant summary judgment on this claim. However, if The Cosmopolitan can provide evidence that statutory immunity applies to it, it may renew its motion for summary judgment.

IV.   Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (ECF #16) is **GRANTED IN PART**.

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment (ECF #15) is **DENIED**.

Dated this 9th day of December, 2021.

Kent J. Dawson
United States District Judge